IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JOHN BANKHURST, PAMELA ANDERSON,
JONATHAN ZANG, and JESSE KARP, individually
and on behalf of all others similarly situated,

                Plaintiffs,

   v.

SUB-ZERO GROUP INC. and
WOLF APPLIANCE, INC.,

                Defendants.

ORDER

23-cv-253-wmc

---

      Before the court is defendants' motion to compel the inspection of plaintiff Jesse Karp's home, dkt. 38, which Karp opposes, dkt. 39. For the reasons stated below, I am granting defendants' motion in principal, although I am offering Karp a way out.

      As defendants explain in their motion, they read plaintiffs' First Amended Class Action Complaint (the "FAC"), dkt. 26, as focusing on the dangerous pollutants emitted by Wolf's gas stoves, a danger about which defendants failed to warn the plaintiff class before its members purchased these stoves. According to defendants, however, any elevated levels of emissions from natural gas appliances usually result from poor-quality or ill-maintained appliances or from inefficient or inadequate ventilation. Dkt. 38 at 1-2. It follows then, say defendants, that they should be allowed to inspect the stoves and the premises of the class's representatives in order to determine whether there actually are harmful pollutants being emitted from their Wolf appliances, and to determine whether the appliance is correctly installed and whether the premises are properly ventilated. *Id.* at 6-8. The three other class representatives have allowed defendants to conduct these inspections.

      But Karp doesn't want defendants' people in his house, period. Karp and his wife have a two year-old child, and they are very concerned about the health and safety of the family, to

the point that they "don't let hardly anybody into our house that we don't know." Dkt. 38 at 4 (quoting Karp's January 5, 2024 deposition testimony).

Plaintiffs respond that defendants have misread the FAC: when it is read correctly, it is clear that home inspections of *any* plaintiff's residence is irrelevant to any claim or defense in this action. Dkt. 39 at 2. According to plaintiffs, their claim is purely economic: they contend that no one in this nationwide class ever would have paid as much as they did for a Wolf gas appliance if defendants "had disclosed the risks posed by pollutant emissions" because the stoves "would have been worth significantly less if Wolf had disclosed the risks posed by pollutant emissions." *Id.* at 4.[1]

In response to defendants' observation that class representatives Bankhurst, Anderson and Zang all have allowed the requested inspections of their homes (*see* dkt. 38 at 4), plaintiffs argue that an inspection of Karp's home "is not relevant to any claim or defense, and therefore is not within the bounds of permissible discovery." Dkt. 39 at 1. Plaintiffs also invoke Rule 26(b)(1)'s proportionality requirement. *Id.* at 4. However, plaintiffs have waived their relevance and proportionality arguments by not raising them prior to defendants' inspections of the residences of the other three representative plaintiffs. Discovery either is relevant and proportional or it's not; a party cannot selectively invoke these requirements to a particular discovery request based on who in their camp is affected by the request. Having allowed defendants to inspect the homes of Bankhurst, Anderson and Zang without objecting on these grounds, it is too late for plaintiffs to do so now on Karp's behest. This, alone, is grounds to grant defendants' motion to compel.

Even absent waiver, the court finds that these inspections are sufficiently relevant to the issues that plaintiffs appear to be raising in the FAC to allow the requested discovery. In ¶¶ 19-

---

[1] Plaintiffs acknowledge that *all* gas appliances present these same risks; *Id.* at 1-2, but that's neither here nor there for today's purposes.

36 paragraph (and footnotes 7-39) of the FAC, plaintiffs set forth in painstaking detail their view of the severe and broad-ranging health risks posed worldwide by gas appliances. It borders on apophasis for plaintiffs now to claim that this meticulous recitation is nothing more than background for their actual claims of failure-to-warn. But, even if the court accepts this assertion, plaintiffs nonetheless have put this information into play by including it in their FAC, so defendants are entitled to develop the evidence that they deem tactically and strategically necessary to meet it and counter it as this proposed class action progresses. Who ends up prevailing in this *thrust-parry-riposte* will be decided later; for discovery purposes, the court finds that plaintiffs' allegations in the FAC entitle defendants to inspect the homes of the representative plaintiffs.

As a corollary to this point, even if the court were to unreservedly accept plaintiffs' assertions that this really is a straight-up failure-to-warn case, I still would find the home inspections relevant to that issue, standing alone. I don't know how plaintiffs' expert intends to accurately quantify the monetary value of Wolf's failure to advise Karp and the other class members that their gas appliances emitted nitrogen dioxide, carbon monoxide and fine particulate matter at levels the EPA and World Health Organization have said are unsafe and linked to respiratory illness, cardiovascular problems, cancer, and other health conditions. *See* FAC, dkt. 26, at ¶ 19. But it appears that Karp has continued to used his Wolf gas range in the year and a half since he reports he first learned of these dangers. FAC at ¶ 60. Is this a relevant factor in determining whether to discount how much Wolf should pay Karp (and other class members) for failing to warn him? It would seem so, although this fact, by itself, would not require defendants to inspect Karp's kitchen. But what if Karp's Wolf range is not actually emitting unsafe levels of nitrogen dioxide, carbon monoxide and fine particulate matter? This additional fact, in conjunction with Karp's continued use of the range, seems relevant to determining the real-world monetary value that Karp puts on the warning that he now asserts

3

he was entitled to receive at the time of purchase. Conversely, what if Karp's kitchen exposes him to nitrogen dioxide, carbon monoxide and fine particulate matter from sources other than his Wolf range? Karp's ignorance of, or indifference to, these other exposure sources likewise would seem to be relevant to determining the actual monetary value of the warning that he asserts was important to him for financial reasons, but not for health reasons.

In sum, defendants are entitled to inspect Karp's kitchen. That said, the court is sensitive to Karp's concerns about letting strangers into his family's home. To that end, defendants must employ all reasonably necessary measures to accommodate Karp's concerns. And if Karp does not believe that such measures suffice, this is an easy problem for Karp to solve: he can withdraw as a representative plaintiff and fall back into the class. At that point, defendants would have no right–and no reason–to come into his house. This is Karp's choice to make.

## ORDER

It is ORDERED that defendants' motion to compel inspection of plaintiff Jesse Karp's home is GRANTED. Each side will bear its own costs on this motion.

Entered this 26th day of February, 2024.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge