IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JOHN BANKHURST, PAMELA ANDERSON,
JONATHAN ZANG, and JESSE KARP, individually
and on behalf of all others similarly situated,

                    Plaintiffs,

    v.

WOLF APPLIANCE, INC., and
SUB-ZERO GROUP, INC.,

                    Defendants.

OPINION AND ORDER

23-cv-253-jdp

---

In this proposed class action, plaintiffs allege that defendants manufacture and sell defective gas stoves. Plaintiffs allege that defendants have both refused to redesign their stoves to reduce harmful emissions and failed to warn consumers that their products pose risks of asthma and other illnesses. Plaintiffs assert 11 claims, which arise under the Magnuson-Moss Warranty Act, the Uniform Commercial Code (UCC), and numerous other state laws related to warranty, contract, and consumer protection.

Defendants move to dismiss plaintiffs' first amended complaint on the grounds that the state statutory and common law claims are preempted by the Energy Policy and Conservation Act (EPCA) and that without predicate state claims, the federal Magnuson-Moss Warranty Act claim fails as well. Dkt. 33. The court concludes that defendants have failed to meet their burden of showing that EPCA's preemption provision bars any of plaintiffs' claims and it will deny the motion to dismiss.

ANALYSIS

Defendants contend that all of plaintiffs' state-law claims are preempted by EPCA,

Pub. L. No. 94-163, §§ 321-39, 89 Stat. 871, 917-32 (1975), codified as amended at 42 U.S.C. §§ 6201-6422, thus leaving no predicate state claim on which to base a Magnuson-Moss claim.

Preemption is an affirmative defense upon which the defendants bear the burden of proof. *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 645 (7th Cir. 2019). The preferred procedure for raising an affirmative defense is to assert it in the answer and move for judgment on the pleadings under Rule 12(c). *Id.* But a Rule 12(b)(6) motion based on an affirmative defense is appropriate "where the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense." *Sidney Hillman Health Ctr. of Rochester v. Abbott Lab'ys, Inc.*, 782 F.3d 922, 928 (7th Cir. 2015) (internal quotation omitted); *see also Novotney v. Walgreen Co.*, 683 F. Supp. 3d 785, 788 (N.D. Ill. 2023). In resolving a motion to dismiss under Rule 12(b)(6), the court takes all factual allegations in the complaint not only as true but viewed in a light most favorable to plaintiffs, including drawing all inferences in plaintiffs' favor. *Killingsworth v. HSBC Bank Nev.*, 507 F.3d 614, 618 (7th Cir. 2007).

The court will begin with a discussion of federal preemption in general, followed by EPCA's preemption provisions specifically, and then explain why defendants have failed to demonstrate that plaintiffs' claims are preempted by EPCA.

## I. Federal preemption

### A. In general

Federal preemption doctrine is rooted in the Supremacy Clause of the Constitution, which prohibits courts from giving "effect to state laws that conflict with federal laws."

*Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324 (2015); *see also Ye v. GlobalTranz Enterprises, Inc.*, 74 F.4th 453, 457 (7th Cir. 2023) (explaining preemption doctrine). There are three recognized types of preemption: express, field, and conflict. Express preemption is at issue in this case, as EPCA states explicitly what states may and may not do with respect to energy conservation and use. *Ye*, 74 F.4th at 457 (reaching the same holding with respect to Federal Aviation Administration Authorization Act in case asserting claim of negligent hiring by motor carrier). The question here is one of statutory construction, to determine whether plaintiffs' state-law claims fall within EPCA's express prohibitions against state regulations concerning certain product energy efficiency and usage. *See id.*

### B. Preemption by EPCA

EPCA was enacted in 1975, in the wake of the 1973-74 oil embargo in part to improve the energy efficiency of specific types of equipment and appliances. *Zero Zone, Inc. v. United States Dep't of Energy*, 832 F.3d 654, 661-62 (7th Cir. 2016). In an effort to protect the appliance industry from having to comply with a patchwork of conflicting state requirements, Congress enacted the National Appliance Energy Conservation Act of 1987 ("NAECA"), which amended EPCA to add various preemption provisions, including the one at issue in this case. *See* PL 100-12, at § 7 (Mar. 17, 1987), 101 Stat 103, 117-18; H.R. Rep. No. 100-11, at 24 (Mar. 3, 1987) ("Section 7 is designed to protect the appliance industry from having to comply with a patchwork of numerous conflicting State requirements."); Kit Kennedy, *The Role of Energy Efficiency in Deep Decarbonization*, 48 Envtl. L. Rep. News & Analysis 10030, 10035 (2018). Specifically, EPCA's general rule of preemption for energy conservation standards, 42 U.S.C. § 6297(c), preempts "state

regulation concerning" the "energy use" of products. "State regulation" means "a law, regulation, or other requirement of a State or its political subdivisions," § 6297(a)(2)(A), and "energy use" is defined as "the quantity of energy directly consumed by a consumer product at point of use," § 6291(4).

Preemption may apply to common-law state torts. "Absent other indication, reference to a State's 'requirements' [in a federal preemption statute] includes its common-law duties." *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 324 (2008); *see also Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 521 (1992) (The phrase "[n]o requirement or prohibition" sweeps broadly and suggests no distinction between positive enactments and common law; to the contrary, those words easily encompass obligations that take the form of common-law rules."); *San Diego Bldg. Trades Council, Millmen's Union, Loc. 2020 v. Garmon*, 359 U.S. 236, 247 (1959) ("The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy."). Therefore, defendants must show that plaintiffs' claims seek to impose, through an award of damages or injunctive relief, requirements "concerning" the "quantity" of natural gas directly consumed by defendant's stoves at their "point of use."

## II.  Preemption of plaintiffs' claims

Defendants' preemption argument relies heavily on *Cal. Rest. Ass'n v. City of Berkeley ("CRA")*, 65 F.4th 1045, 1050-56 (9th Cir. 2023), in which the Ninth Circuit considered whether a City of Berkeley ordinance that prohibited natural gas piping in newly constructed buildings was preempted by EPCA § 6297(c). The ordinance sought to "eliminate obsolete natural gas infrastructure and associated greenhouse gas emissions in

new buildings where all-electric infrastructure can be most practically integrated, thereby reducing the environmental and health hazards produced by the consumption and transportation of natural gas." *Id*. at 1048. The Ninth Circuited noted that EPCA has a "broad" reach and preempts regulations that "directly regulate either the energy use or energy efficiency of covered appliances," going on to hold that the Act's preemption provision extends not only "to regulations that address the products themselves" but also to "the on-site infrastructure for their *use* of natural gas." *Id*. at 1052 (emphasis in original). To that end, the Ninth Circuit held that "Berkeley's ban, if adopted by States and localities throughout the country, would 'significantly burden' the 'sale' of covered products 'on a national basis.'" *Id*. at 1053. The Ninth Circuit also noted that 42 U.S.C. § 6297(d)(3) prevents federal government from waiving EPCA preemption where "State regulation will significantly burden manufacturing, marketing, distribution, sale or servicing of the covered product on a national basis." *Id*.

Defendants argue that the case for EPCA preemption is even stronger in this case than in *CRA* because plaintiffs are attempting to reduce the overall quantity of natural gas consumed by Wolf gas cooking appliances. Specifically, they contend that plaintiffs are invoking state breach of implied warranty, fraudulent omission, unjust enrichment, and consumer fraud and protection laws to regulate the energy use of gas cooking products by: (1) banning the products altogether; (2) requiring defendants to redesign their products to reduce energy consumption; or (3) forcing defendants to issue warnings that would burden the sale of their products.

But the state-law claims in this case are not primarily concerned with the quantity of gas used by defendants' appliances. Two federal district courts in the Ninth Circuit recently rejected similar preemption arguments in cases involving gas appliance emissions, concluding that the appliance manufacturer defendants' reliance on *CRA* was misplaced. Those courts held that defendants failed to show, at least at the pleading stage, that the laws invoked by plaintiffs would necessarily affect the quantity of gas used by defendants' stoves at their point of use in anything more than a tenuous or peripheral manner. *See Hedrick v. BSH Home Appliances Corp.*, No. 23-cv-04752, 2024 WL 2190984, at *8 (C.D. Cal. May 14, 2024) ("Plaintiffs' allegations do not concern the EPCA and the effect that Plaintiffs' claims would have on energy use, if any, is merely tangential and remote"); *Drake v. Haier US Appliance Sols. Inc.*, No. 23-cv-00939, 2024 WL 590597, at *6 (N.D. Cal. Feb. 13, 2024) ("Drake's theory of the case suggests that either improved gas stove efficiency or fewer gas stove purchases driven by additional warnings would impact the quantity of natural gas used overall, but such results are speculative at this juncture, as they are attenuated from the remedies sought."). The same is true in this case.

As plaintiffs argue, the state warranty and consumer protection laws on which they base their claims do not concern how much *energy* defendants' appliances consume. Instead, plaintiffs attack the unsafe levels of hazardous *pollutants*—particularly nitrogen dioxide—that the products allegedly emit, as well as defendants' alleged failure to warn consumers of the associated risks. EPCA broadly preempts state regulation "concerning" energy efficiency and use. But both the United States Supreme Court and the Seventh Circuit have cautioned against leveraging such broad terms to reach state and local regulations that

6

have no more than incidental impact on the preempted subject matter. *See Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 260 (2013) ("[T]he breadth of the words 'related to' does not mean the sky is the limit" with a preemption clause.).[1]

Defendants argue that there is actually a direct correlation between the amount of gas consumed during the use of their stoves and the amount of emissions generated as a result of that use. But any such correlation is speculative at this point. Contrary to defendants' contention, plaintiffs' claims, if successful, would not necessarily reduce natural gas consumption. Plaintiffs seek monetary relief related to what they believe they overpaid for defendants' products, as well as injunctive relief requiring defendants to make design changes to reduce harmful emissions, and warning the public about the health risks associated with their products. *See* Amended Complaint, Dkt. 26, at ¶¶ 66-68 and 79. None of these remedies would necessarily reduce gas consumption. At this early stage in the lawsuit, the court cannot determine as a matter of law whether the relief sought by plaintiffs would affect the quantity of energy directly consumed by gas stoves. *See Drake*, 2024 WL 590597, at *6 ("There are not enough facts available at the pleading stage to

---

[1] *See also California Div. of Lab. Standards Enf't v. Dillingham Const., N.A., Inc.*, 519 U.S. 316, 335 (1997) (Scalia, J., concurring) ("[A]pplying the 'relate to' provision [in the ERISA preemption clause] according to its terms was a project doomed to failure, since, as many a curbstone philosopher has observed, everything is related to everything else."); *Cipollone*, 505 U.S. at 537 (Blackmun, J., Kennedy, J., and Souter, J. concurring in part) (The Court "has declined on several recent occasions to find the regulatory effects of state tort law direct or substantial enough to warrant pre-emption."); *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1051-54 (7th Cir. 2016) (discussing how state laws of general application are less likely to be preempted and holding that "relate to" clause in Federal Aviation Administration Authorization Act's preemption provision does "not preempt state laws 'that affect fares in only a 'tenuous, remote, or peripheral . . . manner'"). *See also CAR*, 65 F.4th at 1064-65 (Baker, J., concurring) (citing same and acknowledging that "EPCA preemption is unlikely to reach a host of state and local regulations that incidentally impact 'the quantity of [natural gas] directly consumed by a [covered] product at point of use.'").

demonstrate that the relief requested would have any impact on the quantity of natural gas consumed at the point of use."); *see also Hedrick*, 2024 WL 2190984, at *8 (citing *Drake* for the same point). A wholesale ban on the sale of defendants' gas stoves or a requirement that defendants redesign their products might run afoul of the EPCA by significantly affecting the amount of natural gas consumed by defendants' products, but defendants have not yet made that showing. And merely requiring a warning would not have any direct effect on the quantity of gas used in stoves at their point of use in consumers' kitchens. *See Drake*, 2024 WL 590597, at *6.

Defendants have failed to show that a reduction in pollutant emissions necessarily requires a corresponding reduction in gas consumption. The motion to dismiss on preemption grounds is denied.

## ORDER

IT IS ORDERED that defendants' motion to dismiss, Dkt. 33, is DENIED.

Entered July 2, 2024.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge